STEPHEN M. WARNER

*v.*

ADALINE CROSBY *et al.*

1. HOMESTEAD—*release by wife under act of* 1869. The Homestead act of 1851, as amended in 1857, required, as a condition to the release of the homestead exemption, that the certificate of the acknowledgment as to a wife should state expressly that she acknowledged her release of the homestead. The reference in the homestead acts to the laws relating to conveyances was as they then were, and not as to future legislation respecting the acknowledgments of deeds of conveyance, and consequently the meaning of the homestead acts is not altered merely by a change in the law in regard to conveyances.

2. SAME—*statute of* 1869 *relating to conveyances.* The act of 1869 relating to conveyances of real estate, changing the prior legislation in respect to the execution of deeds by *femes covert* when they join with their husbands, does not apply to or change the statutory mode required for the release or waiver of the homestead right, that right not being real estate or any "right, title, claim or interest" in real estate, but simply an exemption. It was still necessary that the wife's release should appear in the certificate of acknowledgment as before the passage of that act.

3. STATUTE—*effect of general law on special.* It is a rule that a special act is not affected by subsequent legislation in general terms, although such terms are broad enough to cover the subject of the special legislation, unless it appears the subject of the special act was under consideration.

APPEAL from the Circuit Court of Marion county; the Hon. AMOS WATTS, Judge, presiding.

This is forcible detainer, brought before a justice of the peace, by appellant against appellees, for the possession of real estate occupied as a homestead by them at the time of the making of the mortgage in question, and such occupation was continued until the trial in the circuit court, to which the proceeding was taken by appeal. In that court, a jury being waived, the trial was by the court. Judgment was given for defendants, and plaintiff appeals to this court.

Plaintiff claimed under a mortgage, with power of sale, executed by defendants in January, 1870, by which they purport to convey the premises in question to Amos Clark, to secure the payment of the sum of $2500 in two years. The land was the separate property of Adeline Crosby, the wife of Aaron H. Crosby, and the debt secured was the debt of the husband, evidenced by his promissory note. After the debt became due the property was sold under the power in the mortgage, and a deed made conveying the property to Warner, the appellant.

The only objection made in the circuit court, as to the right of recovery, was the allegation of the right of occupancy by defendants of the premises as a homestead. The only question is, whether, by the terms of the mortgage and of the acknowledgment, this right of homestead had been effectively released.

In the body of the mortgage deed these words are found : "And the said Adeline Crosby, and Aaron H. Crosby, her husband, hereby expressly waive, release and relinquish unto the party of the first part, his heirs and assigns, all right, title, claim, interest and benefit whatever in and to the above described premises   *   *   *   which is given by or results from all laws of this State pertaining to the exemptions of homesteads." This mortgage was signed and sealed by both wife and husband. The certificate of acknowledgment attached states that these makers (known to be such to the officer) "ap-

21—89 ILL.

peared before him on the 3d day of January, 1870, in person, and acknowledged that they executed and delivered the said mortgage as their free and voluntary act, for the uses and purposes therein set forth." There is nothing said in the certificate of acknowledgment about the release of the right of homestead.

Appellant contended, first, that under the act of 1869, a married woman joining with her husband in the execution of a mortgage on her separate property, "need not acknowledge the same before any officer, and that the execution of the same may be proved in the same manner as if she were sole;" and, second, that even if a certificate of acknowledgment was necessary, the one indorsed on this mortgage was all that was required by that act.

Messrs. CASEY & DWIGHT, for the appellant.

Mr. HENRY C. GOODNOW, for the appellee.

Mr. JUSTICE DICKEY delivered the opinion of the Court:

Prior to the act of 1869, the mode of conveying the fee in land was one thing, and the mode of releasing land from the statutory exemption of the homestead was another thing. The former was regulated by the chapter entitled "Conveyances," in the Revised Laws of 1845. The latter was controlled by the act of 1851, relating to the exemption of homesteads, as amended in 1857. These latter acts made reference to the laws of 1845, and were construed by this court to require an acknowledgment from the wife (for the release of homestead) which was not the same in substance or form with any acknowledgment mentioned in the conveyancing acts, but which did conform to such acknowledgments, as to the manner thereof, in certain respects, and among others in that it should be certified that the acknowledgment by her was specific, stating expressly what she did acknowledge she had done.

After the passage of the act of 1857, as to the mode of releasing the homestead right, and before the act of 1869, if the land was that of the husband, the mode of conveying the fee or any estate in the land was merely by the execution of a deed by the husband; (and that might be proved by testimony of signing, sealing and delivering, or by a certificate of acknowledgment by the husband.) The mode of releasing the dower of the wife in such lands was by her joining her husband in the deed, and by her acknowledgment of the same duly certified, so that the certificate should show that she appeared personally before the officer, knowing her identity personally or from proof, and was examined separately and apart from her husband, and made acquainted with the contents of the deed, and acknowledged that she had so executed the deed voluntarily, and without compulsion of her husband, and that she had released her right of dower.

If the land in question was that of the wife, the mode of conveying the estate was by her uniting with her husband in a deed conveying the same, and so acknowledging the same that the certificate of the officer should show the separate examination of the wife, that the contents of the deed were made known and explained to her, that she acknowledged the free and voluntary execution thereof for the purpose of conveying the estate, and that she did not wish to retract the same.

Both these matters were regulated by the Revised Statutes of 1845.

After the passage of the act of 1857, and before the act of 1869, whether the land in question was that of the husband or that of the wife, the mode of effectively releasing the right of homestead was regulated not by the provisions of the Revised Statutes of 1845, but by the Homestead act of 1851, as amended by the act of 1857. To effect a release of the homestead (even in the lands of the husband) it was necessary that the wife should not only sign the deed, but that she should acknowledge the same; and it was not sufficient that she should merely make *the* acknowledgment required by the sta-

tute of 1845, relating to the alienation of her own estate in the land, or relating to the release of dower in her husband's land, nor was it sufficient that she should combine in one acknowledgment all that was required by the statutes of 1845, for both of these purposes, but it was necessary, by reason of the provisions of the act of 1857, as construed by this court, that she should specifically *acknowledge* that she had released *the right of homestead.* This was expressly decided in *Boyd* v. *Cudderback,* 31 Ill. 113. In that case the land was that of the wife; the husband and wife joined in the mortgage; the body of the mortgage declared that the homestead right was thereby released, and the acknowledgment was all that was required by the statutes of 1845 to convey the wife's estate, but there was nothing said in the certificate as to the acknowledgment by the wife of the alienation of the right of homestead, and it was, for that cause, held by this court, that the right of homestead was not effectively released. That case was a bill to restrain a sale of the property under the mortgage, and the sale was stayed. In *Smith* v. *Miller et al.* 31 Ill. 157, which was ejectment, under just such a mortgage, the same doctrine was declared and applied.

Thus stood the law in 1869, when an act was passed to amend the chapter entitled "Conveyances," in the Revised Statutes of 1845, in which it was enacted that any *feme covert* joining with her husband in the execution of any " mortgage or other writing relating to the sale or disposition of lands or real estate shall be bound and concluded as if she were sole, in respect to *her* right, title, claim, interest or dower in such real estate ; and the acknowledgment or proof of such mortgage or writing shall be the same if she were sole."

The only question presented in this case is, whether this statute of 1869, passed as an amendment to the Statutes of 1845, (which related solely to the alienation of the estate of the wife in her own lands, and to the relinquishment of her right of dower in her husband's lands,) by its general words shall be held to operate as an amendment of the

statute of 1851 as amended in 1857, which related solely to
the means made essential to the release or waiver at termina-
tion of the right of exemption of the homestead. It is true,
the homestead acts were dependent upon the laws of 1845 for
their construction. By the homestead acts it was necessary,
in a case like this, that the release of the homestead should
be in writing, and signed both by the husband and wife, and
acknowledged by each of them "in the same manner as convey-
ances of real estate *are* by law required to be acknowledged."

To construe this clause of the Homestead act reference was
necessarily had to the chapter on "Conveyances," in the laws
of 1845—for there, and there alone, could it be ascertained
what manner of acknowledgment was required by the Home-
stead act. The reference was to these laws as they *then were.*
This reference gave to the Homestead act a fixed, definite
meaning—as much so as if it had been said the certificate of
the acknowledgment of the wife must state expressly that she
acknowledged that she released the right of homestead. The
homestead acts, in this regard, make no reference to future
legislation as to acknowledgment of conveyances of real estate.
The meaning of the Homestead act, therefore, can not be al-
tered merely by a subsequent change in the law about convey-
ances of real estate.

We next inquire whether the affirmative words of the act
of 1869 make it applicable to the release of the homestead
right.

The right of homestead is not, strictly speaking, a right in
or to her estate, or a title in or to her estate, or a claim in or
to her estate, or an interest in her estate, or a dower in her
estate. It was not an estate in the land. It was merely an
exemption of the homestead from the ordinary modes of alien-
ation. It could not be sold to another so as to vest the same
in another. It was simply a right to exemption, which might
be waived, terminated or discharged in the manner pointed
out by the statute, and that mode was the same whether the
right related to the land of the husband or to the land of the

wife.   Where the land was that of the husband, he could not alienate the homestead right, without the act of the wife, although he has full power to contract for himself.   The giving to her the full power to contract in relation to her own real estate does not in any way dispense with the mode made essential by the statute to the termination of the exemption which protected the right of occupancy of the homestead. Before the statute of 1869, the husband, by his mere deed, not acknowledged at all, could convey the fee of his own land.   By such deed the estate passed, subject to the right of occupancy as a homestead,—this right being exempt from effect by such deed.   This exemption could not be released, terminated or waived in such case even by the deed and acknowledgment of the owner.

The policy of the Homestead act was to guard the alienation or surrender of the right of homestead with great vigilance and jealousy.   The fact that the policy of the State in protecting a *feme covert* against her own ignorance and against the supposed influence of her husband, in so far as regards the alienation of her lands and the relinquishment of her dower, has changed, does not necessarily imply that such safeguards are no longer thought necessary in regard to the homestead right.

The act of 1869 is very full in its enumeration of the subjects-matter on which it was intended to operate, but it does not name or refer to the right of homestead as one of its subjects.   Neither is the right of homestead embraced in the proper meaning of any of its terms.   In the first place, by the terms of the act of 1869, the instruments (by which that act says the wife shall be bound) must relate to the disposition of real estate.   It is very plain that prior to the act of March 22, 1872, which went into force July 1, 1872, the right of exemption of the homestead (from alienation or destruction, except in a given way,) did not constitute real estate in any sense of that term.   In the second place, she is, by the act of 1869, to be bound only "in respect to her right, title, claim, interest,

or dower in such real estate." It is very plain, as already suggested, that prior to that act this right of exemption of the homestead from alienation was not, in any proper sense, a right in real estate, or a title to real estate, or a claim to real estate, or an interest in real estate, or dower in real estate. In *McDonald* v. *Crandall*, 43 Ill. 231, (decided in 1867,) this court held that the Homestead act did not create a new estate, but simply an exemption. The same doctrine is taught in *Hewitt* v. *Templeton et al.* 48 Ill. 367. The estate in the lot of land occupied as a homestead by the owner of the estate, whether such estate be for life, for years, or in fee, might be conveyed by deed, in the mode provided in the law of conveyances, but the operation of the deed in giving right to immediate possession, remained suspended so long as the exemption lasts. All "*rights* in real estate" can be so conveyed; all claim to real estate may be so transferred by deed to another; and so it is with all "interest in real estate." This homestead exemption could not be sold or conveyed to another so as to vest in the grantee the homestead right of the grantor. This homestead right might be terminated or extinguished either by abandonment, or by a release in writing properly signed and properly acknowledged, or by surrender of the possession to a grantee in a deed in pursuance of the deed. It is plain, this homestead right was not, in its nature, capable of sale and transfer to another, so that it could exist in the hands of the grantee and be enjoyed by him as the same right which the grantor had before the making of the grant. The act of 1869 being, in its terms, confined to such rights, titles, claims and interests as were subject to transfer by sale and conveyance, can not be held to have any relation to the mode of releasing or terminating, waiving or extinguishing the right of exemption under the Homestead act. Dower right, like the homestead right, is not such an estate as may be sold or transferred to another by deed, so as to vest a dower right or interest in the grantee. That, too, could be relinquished—extinguished— in a mode prescribed by statute. Hence, to make the act of

1869 apply to dower, it was expressly mentioned in the act. Had dower not been expressly mentioned in the act, the mode of relinquishing it would undoubtedly have remained subject to the laws of 1845. The fact that dower is mentioned, and the right of homestead exemption is not mentioned, is potent in showing that the latter was not intended to be affected by the act.

That this is a true rendering of the legislative intention is made manifest from the fact, that when the General Assembly, by act of March 22, 1872, which went into force July 1, 1872, changed the nature and character of the right of homestead from a mere exemption to that of "an estate of homestead," it was perceived that the provisions of the act of 1869, relating to conveyances, might be thought to be thereby rendered applicable to the right of homestead, on the ground that the statute has now made it *an estate* in land, and might be held capable of sale and conveyance to another so as to vest a right in the grantee. And accordingly, as it was not intended to withdraw from the homestead right the safeguards which it formerly had, the General Assembly, in 1874, provided, that to effectively release the homestead, the certificate of acknowledgment shall contain a clause substantially as follows: "including the release and waiver of the right of homestead," or other words which "shall expressly show that the parties * * intended to release such right."

It does not seem reasonable that the General Assembly of this State thought it wise, from 1869 until 1874, to withdraw the old safeguards thrown around the right of homestead from 1857 to 1869, and that in 1874 it changed the policy on that subject to its original status. It is more reasonable to hold that it has all the time been the intention of the General Assembly to guard this right of homestead, and hence the words of the act of 1869 ought not to be strained beyond their literal meaning to reach so unreasonable a conclusion.

The words of the statute of 1869 are general. The homestead right is not mentioned as a subject matter of the act.

It in no way appears that the Homestead right was at all under consideration when the act of 1869 was passed. It is a rule, that a special act is not affected by subsequent legislation in general terms, although such terms are broad enough to cover the subject of special legislation, unless it seems that the subject of the special act was under consideration. Under that rule we must hold that the special protection of the homestead right, created by the act of 1857, is not destroyed or in any way affected by the general words of the act of 1869. This determination is very much fortified by the fact that the purpose of the latter act, as expressed in its title, was merely to substitute its provisions for the provisions of the statutes of 1845, which had no reference whatever to the matter of homestead rights.

Much stress is placed upon certain expressions found in the decision of this court in *Knox* v. *Brady*, 74 Ill. 476. No question as to the homestead was before the court in that case. The only question was whether, under the act of 1869, the wife could bind herself by contract to release her right of dower in the lands of her husband, and the court held that she could not. In discussing the act it is there incidentally said, "all contracts of a married woman in relation to her husband's lands, such as dower and homestead, being void, for want of capacity in her to contract, can not be enforced against her. She could only relinquish such rights by joining with her husband in the execution of the mortgage in the manner *provided by law*," and for this reference is made to *Bressler* v. *Kent*, 61 Ill. 426. That case related to a deed of a married woman purporting to convey her own land. The deed was duly acknowledged by the woman, but her husband did not join in the deed, and hence it was held void. It is plain no reference was had, in the above quotation, to the question presented in this case.

Again, it is said, in *Knox* v. *Brady*, "if she chose to relinquish her dower and homestead in the lands of her husband, * * * she had that privilege by joining with her husband

in the deed or mortgage, but not otherwise. It is only by joining with her husband in the execution of the deed or mortgage she could be concluded *at all* in regard to such rights." These expressions, to be properly understood, must be read in view of the question then under discussion. They simply mean, that a *joining in a deed* with the husband is essential to the effective release of dower or homestead. There was no question then before the court, as to whether an acknowledgment by the wife is or is not essential to the release of a homestead. Nor is anything said on that subject in that opinion, except the expression "it may be that such deed" (a deed with her husband relinquishing her rights in her husband's lands, such as dower and homestead,) "would be good, upon proof of the signature of the maker, without acknowledgment." It is plain, the court did not intend to decide that question one way or the other. The substance is, that even though such a deed were held effective for the purpose of the release of dower or homestead, it would not follow that a married woman, who had contracted to make such a deed, could be compelled to perform such a contract, for the reason that conferring power by statute upon a *feme covert* to release dower or homestead in a given way, does not confer upon her the capacity to bind herself by contract to do so.

After a careful consideration of this question, we are clear in the opinion that the act of 1869 does not dispense with the necessity of an acknowledgment of the wife that she has released the right of homestead, and that the act of 1857, whereby "the signature and acknowledgment of the wife" is required, "in all cases, as conditions to the alienation of the homestead," was not affected by the act of 1869. Hence, at the time when the mortgage in this case was made, it was essential to the waiver or release of the right of homestead that the wife should *acknowledge* before the officer that she had released the homestead right.

The judgment must be affirmed.

*Judgment affirmed.*